# United States Court of Appeals
## For the First Circuit

---

No. 97-1946

RHODE ISLAND LABORERS' DISTRICT COUNCIL,
LOCAL UNION 808, ET AL.,

Plaintiffs, Appellants,

v.

STATE OF RHODE ISLAND, ET AL.,

Defendants, Appellees.

---

No. 97-1987

DAVID E. PERRY, ET AL.,

Plaintiffs, Appellants,

v.

STATE OF RHODE ISLAND, ET AL.,

Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Francis J. Boyle, Senior U.S. District Judge]

---

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

---

<u>Richard   A.   Fairbrothers</u>,   Regional   Attorney,   with whom <u>Darren F. Corrente</u>, Regional Attorney, was on brief for appellants Rhode Island Laborers' District Council, Local Union 808, et al.

<u>Miriam Weizenbaum</u> with whom <u>Amato A. DeLuca</u> and <u>DeLuca & Weizenbaum, Ltd.</u> were on consolidated brief for appellants David E. Perry, et al.

<u>Thomas A. Palombo</u>, Special Assistant Attorney General, State of Rhode Island, Department of Attorney General, and <u>Harris K. Weiner</u>, Deputy Executive Counsel to the Governor, on consolidated brief for appellees State of Rhode Island, Governor Lincoln C. Almond, General Treasurer Nancy J. Mayer, Attorney General Jeffrey B. Pine, Director of Administration Robert L. Carl, Jr., and Supreme Court Administrator Robert C. Harrall.

———————————

May 27, 1998

———————————

BOUDIN, Circuit Judge.  In 1976, Rhode Island adopted a statute, entitled Court Clerks' Incentive Pay, providing salary bonuses for state court clerks who obtained certain degrees.  1976 R.I. Pub. Laws ch. 205, § 1, codified as amended at R.I. Gen. Laws §§ 8-4.1-1 to 8-4.1-5 (1997).  A 10 percent salary increase was provided for a court clerk who obtained an Associate's Degree in fields relating to law enforcement or administration of justice; a Bachelor's Degree in such a field or any field suitable for admission to an accredited law school was worth a 16 percent increase.

After almost 20 years, Rhode Island in 1994 amended the statute to replace percentage bonuses with flat rate amounts: clerks receiving the 10 percent increase would instead receive $2,000 yearly, and clerks receiving the 16 percent increase would receive $3,200.  1994 R.I. Pub. Laws, ch. 125, § 1, codified at R.I. Gen. Laws § 8-4.1-3 (1997).  Clerks hired after July 5, 1994, received no incentive pay.  Id., codified at R.I. Gen. Laws § 8-4.1-1.  The amendment provided that it would not take effect as to clerks already receiving incentive pay until the expiry of collective bargaining agreements then in force.  Id. § 2, codified at R.I. Gen. Laws § 8-4.1-7.

The amendment effectively reduced the salaries of the clerks, in some cases by over $7,000 per year.  A group of clerks sued Rhode Island and its officials in the district court, claiming

-3-

that the amendment was unconstitutional.  A similar claim was made
by the Rhode Island Laborers' District Council, Local Union 808
("the union") which represented a number but not all of the court
clerks.  The union's complaint also charged that the amendment
abrogated its collective bargaining agreement with Rhode Island.

The cases were consolidated before the district court,
which heard cross-motions for summary judgment on an agreed
statement of facts.  On July 24, 1997, the district court granted
judgment in favor of the state, rejecting the constitutional
attacks on the amendment.  The district court explicitly declined
to address a claim advanced by the union based on state collective-
bargaining law because it had not been briefed or argued by the
union.

The clerks and the union now appeal, and we affirm,
primarily on the basis of the district court's decision.  No
detailed discussion of principles is needed because the pertinent
law relating to the Contracts Clause, U.S. Const. art. I, § 10, the
main pivot of the appellants' argument in this court, has been set
forth in Parker v. Wakelin, 123 F.3d 1, 9 (1st Cir. 1997), cert.
denied, 66 U.S.L.W. 3717 (U.S. May 5, 1998) (No. 97-1181), and
McGrath v. Rhode Island Retirement Board, 88 F.3d 12 (1st Cir.
1996).

As Parker and McGrath explain, the first requisite for a
Contracts Clause argument is showing the existence of a contract

-4-

governing the subject in dispute.  Although federal rather than state standards govern this issue, General Motors Corp v. Romein, 503 U.S. 181, 187 (1992), there is nothing recherché about the criteria.  They may include not only the words used but also apparent purpose, context, and any pertinent evidence of actual intent, including legislative history.  No single form of wording is essential in order to find a contractual relationship.  Cf. Parker, 123 F.3d at 9.  Further, "a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights . . . ." United States Trust Co. v. New Jersey, 431 U.S. 1, 17 n.14 (1977).

Yet, while contracts between private parties are sometimes inferred rather easily, see McGrath, 88 F.3d at 19, the Supreme Court has for obvious reasons been more demanding where legislative acts are claimed to create contracts binding future legislatures.  Thus, the Supreme Court has said that such a surrender of legislative authority must be expressed "in terms too plain to be mistaken." United States v. Winstar Corp., 116 S. Ct. 2432, 2455 (1996) (quoting Jefferson Branch Bank v. Skelly, 66 U.S. (1 Black) 436, 446 (1861)).  This court has followed that precept. Parker, 123 F.3d at 5.

What has been called the "unmistakability doctrine," McGrath, 88 F.3d at 19, easily disposes of this case.  Ordinarily, pay schedules for state employees can be altered at will by the

-5-

legislature.  The 1976 statute enacting incentive pay for court clerks does not say in terms that it is creating contractual rights or otherwise explicitly promise that incentive pay will never be reduced or eliminated for clerks who obtained the degrees rewarded by the statute.  Nor has any legislative history been unearthed by the parties expressing the legislature's intention that incentive pay be permanent and never subject to revision.

The only scrap of evidence identified by the clerks is the original statute's language "_offering_ financial compensation for clerks . . . for furthering their education." R.I. Gen. Laws § 8-4.1-1 (emphasis added).  "Offer" is a term often used in contract formation, but it is also a word of general usage and does not alone convey an "unmistakable" intent to create a binding contract.  It could be easily argued that the term "compensation" connotes "salary"--normally subject to legislative adjustment-- especially because the increase was not limited to the period needed to recoup out-of-pocket costs of education.

Of course, a clerk with a specialized degree may be worth more to the state, justifying payment of the educational bonus after out-of-pocket expenses have been recovered.  But this view makes the incentive pay look more like ordinary compensation reflecting the employee's skill level, grade or seniority.  True, there is seemingly an element of reimbursement as well--and arguably some unfairness to any clerk who has not recovered his or

her costs.  But the commitment was not unmistakably contractual, and that is the end of the matter under existing law.[1]

In the district court, the union also sought declaratory relief based upon its collective bargaining agreement with the state.  The collective bargaining agreement at issue included some aspects of the statutory incentive pay plan (as well as other bonus provisions not contained in the statute); to that extent, the incentive pay of those clerks who were union members was independently protected by the collective bargaining agreement.

As already noted, the 1994 amendment at issue, effectively reducing incentive pay for current clerks, stated that it would not take effect as to clerks covered by labor contracts until their collective bargaining agreement expired.  Thus the statute was crafted to accommodate the agreement and not to conflict with it.  The collective bargaining agreement contained an expiration date of June 30, 1995, provided that one party gave notice of intent to terminate.  The union does not dispute that the state gave timely notice.

However, there are a few references in the union's brief in this Court that could be read to suggest that the collective bargaining agreement was somehow extended because assertedly one of

---

[1]Appellants' due process and takings claims depended on the existence of a property right, which appellants sought to base on a contractual right to permanent incentive pay.  The decision that there is no protected contract right resolves these further claims.

the negotiating lawyers wrote a letter on July 12, 1995, representing that the state would maintain "the status quo during negotiations." Alternatively, the union may be suggesting that Rhode Island's collective bargaining statute required the state to continue to respect the terms of the expired agreement until an impasse was declared or a new agreement negotiated. These suggestions may or may not be the same arguments that the district court declined to address for failure to brief them.

In all events, it is patent that the union's main brief in this court does not seriously develop and support these further arguments. Any claims that the collective bargaining agreement was extended beyond its expiration date require independent structure and support. The union's main brief contains nothing beyond terse references and hints. Under well-settled precedent, these further claims are waived, and we decline to address them on the merits. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).

Affirmed.